IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENERATIONS HEALTH CARE NETWORK, LLC, et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 18 C 267 |
| v. | ) ) | Judge Franklin U. Valderrama |
| THERESA EAGLESON, in her official capacity as the Director of the Illinois Department of Healthcare and Family Services, | ) ) ) ) ) | Magistrate Judge Finnegan |
| Defendant. | ) | |

## ORDER

Plaintiffs Generations Health Care Network, LLC, Carlyle Healthcare Center, Inc., St. Vincent's Home, Inc., Clinton Manor Living Center, Inc., and Extended Care Clinical LLC move to compel full and complete responses to Interrogatories 4, 5, 7, 9, and 10, and Requests for Production 2, 3, 4, and 30. (Docs. 88, 89, 93).[1] Defendant Theresa Eagleson, in her official capacity as the Director of the Illinois Department of Healthcare and Family Services ("Department"), opposes the motion. (Doc. 91). For the reasons stated here, the motion is granted in part and denied in part.

## BACKGROUND

### I. Allegations

Plaintiffs own or operate skilled and long-term care nursing facilities throughout Illinois. They allege that Defendant violated federal law by failing to comply with the Medicaid Act's public notice requirements. (Doc. 47). More specifically, Plaintiffs allege that: under 42 U.S.C. § 1396a(a)(13)(A), the State of Illinois must provide a public process for determination of rates of payment under the state plan; and under 42 C.F.R. § 447.205(a), the State of Illinois must provide public notice of any significant proposed change in the methods and standards for setting payment rates for Medicaid services. They allege (sometimes "on information and belief") that this did not happen in respect to a 1994 "rate freeze" and subsequent regulations modifying it, as reflected in Sections 153.100, 153.125, and 153.126 of the Illinois Administrative Code ("Code").

As the district judge (then Judge Gottschall) observed in ruling on a motion to dismiss the First Amended Complaint, Plaintiffs have "characterize[d] this case as an

---

[1] Heritage Operations Group, LLC withdrew as a plaintiff on July 9, 2021. (Doc. 100).

effort 'to require[] Defendant to comply with the Federal Medicaid Act and provide the notice as required by the Federal Medicaid Act.'" (Doc. 25, at 5). As explained in that opinion, Plaintiffs cannot obtain any monetary relief in this lawsuit since "[t]he sovereign immunity protected by the Eleventh Amendment extends to suits against a state official in his or her official capacity for money damages because 'a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents.'" (*Id*. at 4) (quoting *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Nor can Plaintiffs sue "to force state officials to conform their conduct to state law." (*Id*. at 4-5) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)).

But under "'[t]he exception recognized in *Ex parte Young*, 209 U.S. 123, 159–60 (1908) … the Eleventh Amendment does not bar suits against state officials seeking prospective equitable relief." (*Id*. at 4). "To decide whether the *Young* exception applies, the court 'need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (*Id*. at 5) (citation omitted). Applying that inquiry to a case in which nursing facilities sought to enforce Section 1396a(a)(13)(A)'s requirement for a public process in rate setting, the Seventh Circuit held that the Eleventh Amendment "did not bar the plaintiffs' claims to the extent they, 'now and in the future [sought] to provide the required public process in setting rates.'" (*Id*. at 8) (quoting *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 823 (7th Cir. 2017)). For that reason, Judge Gottschall allowed some portions of the lawsuit to proceed.

On October 28, 2019, the newly-assigned district judge (Judge Seeger) entered the following order:

> Counsel agreed that the case would likely turn on a purely legal question. Defendant's counsel represented that it has propounded interrogatories asking Plaintiff to specify the regulatory provisions at issue. On its own motion, the Court directs Plaintiff to identify which specific regulatory provisions it claims Defendant violated and to amend the complaint to reflect this information by November 25, 2019. The Court directs counsel to meet and confer to narrow the range of disputed issues and to identify with specificity the outstanding factual issues left for discovery.

(Doc. 42).[2] Following this, on November 25, 2019, Plaintiffs filed the operative Second Amended Complaint. (Doc. 47).

---

[2] On September 28, 2020, the case was reassigned to Judge Valderrama. (Doc. 81).

## II. Discovery[3]

In July 2019 (before filing the more focused Second Amended Complaint), Plaintiffs issued extremely broad written discovery in the form of interrogatories and requests for production, most with no time limitations. (Docs. 48-1, 48-2). After reviewing a vague two-page joint status report dated November 15, 2019, this Court directed the parties to file a supplemental report that identified with specificity the disputed factual issues in the case. They did so in separate supplemental status reports on November 25, 2019 (Docs. 48, 49) that are summarized below.

Additionally, the parties provided helpful background regarding Plaintiffs' claims at a subsequent status hearing, indicating that in 1994 there was a Medicaid rate freeze for Illinois nursing homes, and since then there have been changes and modifications. The freeze and subsequent changes are reflected in two places: the Code; and the State Plan Amendments (also known as SPAs). The SPAs are submitted for approval to the federal agency known as CMS (Centers for Medicare & Medicaid Services). In this lawsuit, Plaintiffs claim that Defendant did not submit the rate freeze and amendments to CMS for approval. Plaintiffs also claim that Defendant did not comply with the public notice requirements, either because notice was not timely or based on the content of the notice.

### A. Factual Disputes

In Defendant's November 15, 2019 status report, counsel opined that minimal discovery was necessary on Plaintiffs' claims, which could be grouped into four general categories (listed below as items 1 through 4). (Doc. 49). Plaintiffs' status report was organized differently and noted that the recently-filed Second Amended Complaint "identif[ied] with more specificity which provisions Plaintiffs allege Defendants [sic] have propounded without the notice required by federal law." (Doc. 48). Plaintiffs' status report also identified specific factual disputes and the discovery sought to resolve the disputes. For convenience, these disputes are described in bullet points directly below the categories of claims outlined by Defendant.

1) **Illinois Administrative Code: Publication of Methodologies**
   Defendant allegedly failed to publish justifications and methodologies for rate change amendments to Sections 153.100, 153.125, and 153.126 of the Code. (Doc. 49, at 1).

   - The parties anticipate that the issue of whether justifications and methodologies are required under federal law will be a legal issue, however the factual question of whether Defendant published any justifications and/or methodologies is disputed so discovery is sought on this issue. (Doc. 48, at 3).

---

[3] Given the passage of time and the turnover of lawyers representing Plaintiffs (Docs. 82, 84, 85, 95, 96, 101-04), this Order provides a more detailed history of discovery than would ordinarily be necessary.

2) **Illinois Administrative Code: Timing of Notices**
   On multiple occasions, Defendant allegedly failed to provide published notice of a proposed rate *prior* to the effective date of the new rate. (Doc. 49, at 2). Plaintiffs' Second Amended Complaint identifies specific subparts of Sections 153.100, 153.125, and 153.126 of the Code, and alleges dates on which notices relating to these subparts were published in the Illinois Register. (*Id.*).

   - Plaintiffs seek discovery regarding the publication of notice prior to the effective dates: the dates of website publication of notice; and the reliability and accuracy of Defendant's website archive (indicating whether Defendant published notice on the website and the date it did so). (Doc. 48, at 2). The parties dispute the dates of physical publication of notice of amendments to Sections 153.100, 153.125, and 153.126 of the Code. (*Id.* at 3). Also, Plaintiffs seek discovery regarding the third-party periodicals used by Defendant for publication, if any. (*Id.* at 3-4).

3) **State Plan Amendments: Submission to CMS**
   On information and belief, Defendant never submitted the 1994 "rate freeze" and Code Sections 153.125 and 153.126 to CMS for approval as SPAs. (Doc. 49, at 2).

4) **State Plan Amendments: Retroactivity**
   Defendant allegedly has submitted requests for approval by CMS of certain amendments which affect Medicaid reimbursement rates to long-term care facilities *subsequent* to the effective date of said amendments. (Doc. 49, at 2). The parties agree that this claim presents a purely legal issue. (*Id.*). Also, Defendant allegedly did not publish notice of proposed plan amendments submitted to CMS on November 24, 2009 or April 8, 2015. (*Id.* at 3).

   - Plaintiffs seek discovery as to Defendant's public notice process for SPAs. (Doc. 48, at 5). The parties dispute whether Defendant published timely notice of proposed amendments to the Illinois State Plan, and Plaintiffs allege Defendant did not publish any notice of certain amendments to the Illinois State Plan. (*Id.*).

   **B. Defendant's Search for and Production of Documents**

Defense counsel expressed the view during a December 9, 2019 hearing that—as to the allegations that Defendant had not gotten approval from CMS—little discovery would be necessary since Defendant would either provide the approval or indicate that approval was not required. Similarly, with regard to allegations that Defendant had not timely provided notice, counsel anticipated that documentation of notice would be provided to Plaintiffs, whether it occurred through publication in the Illinois Register, in a newspaper, or on Defendant's website. At a later hearing, defense counsel indicated that documentation was currently being pulled to answer the following questions: Did

Defendant get CMS approval? Did Defendant issue public notice? And if so, when was the notice issued, and what did it look like?

But defense counsel also claimed the process of identifying and producing the documents was somewhat complicated because the rate freeze amendments in the Code have 56 different subparts enacted at various times from 1994 to the present. As an initial step to gathering documents, Defendant was reportedly required to take each of those subparts and map it to a corresponding State Plan Amendment. Based on this, Defendant determined that there are approximately 26 SPAs that appear to be relevant here. Defendant reportedly submitted an approval package to CMS each time it sought approval for the rate freeze amendments. These packages include a cover letter from CMS and other paperwork. As of December 9, 2019, Defendant already had pulled approval packages for all 26 SPAs so they could be reviewed by counsel and then produced to Plaintiffs.

As for documents related to the notices, defense counsel claimed these were not as easily compiled since the notice was not always kept as part of the files. He also said the notices could appear in a newspaper, on Defendant's website, or in the Illinois Register. By the time of the next status hearing (on December 19, 2019), Defendant reportedly had located eight public notices for certain plan amendments, and believed notice had been given as to all amendments since CMS would not have granted federal approval otherwise. Defense counsel said he expected to make a further production of documents within one month.

During the January 23, 2020 status hearing, defense counsel reported that he had produced the documents identified during the previous hearing, and Plaintiffs' counsel confirmed receipt, noting that these were responsive to two of the requests for production.

### C. Parties' Agreement on Supplemental Written Discovery

Plaintiffs' counsel noted during the January 23, 2020 hearing that she was still waiting for the rest of discovery to be produced on a rolling basis. Defense counsel responded that the requests for production (issued before the filing of the more specific Second Amended Complaint) were overbroad, and that was why the parties had turned to the process of producing the specific documents outlined during the prior hearings. Defense counsel requested that Plaintiffs' counsel review the recently-produced materials and if these were still deemed insufficient, then indicate what other materials Plaintiffs were expecting. The Court directed Plaintiffs to finish their review of the documents produced by Defendant, and then confer concerning the need for any additional documents to be identified with specificity.

During the March 13, 2020 status hearing, defense counsel reported making three supplemental productions since the last hearing and said Defendant was continuing to search for additional documents focusing on publication of notice of specific amendments to Sections 153.100, 153.125, and 153.126 of the Code identified both in the Second Amended Complaint and in communications with counsel. Defense counsel also said he

was working on some loose ends in terms of discovery, and felt there might be one more wave of documents produced within a month. He added, however, that Defendant was close to exhausting the search efforts so it was unlikely that further documents would be located given the long passage of time. But Plaintiffs had given Defendant a list of specific outstanding discovery items, and discussions were ongoing regarding the website notice issue.

Also during the March 13, 2020 status hearing, Plaintiffs again raised the issue that Defendant had not yet responded to all of their original requests for production, and instead was producing documents to supplement Defendant's initial disclosures. Defendant represented that the produced documents were both supplemental disclosures as well as responsive to certain of Plaintiffs' requests for production identified by counsel. After acknowledging that Plaintiffs' discovery requests had been drafted before the filing of the Second Amended Complaint, counsel offered to amend the requests to be much more specific and to reflect that complaint. Ultimately, the parties informed the Court in their September 11, 2020 joint status report (Doc. 79) that they had conferred and agreed that Defendant would provide written responses only to Plaintiffs' existing Interrogatories 4, 5, 7, 9, and 10 and Requests for Production 2, 3, 4, and 30, and this would be done by October 9, 2020.[4]

Defendant provided those responses. (Doc. 89-1). After unsuccessful efforts to resolve disputes over alleged deficiencies in the responses, Plaintiffs filed the pending motion to compel.

## DISCUSSION

Plaintiffs' motion to compel seeks full and complete responses to Interrogatories 4, 5, 7, 9, and 10, and Requests for Production 2, 3, 4, and 30. (Doc. 87).

### A.   Standard

As an initial matter, the motion argues that this Court should construe the Federal Rules of Civil Procedure ("Rules") "'broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" (Doc. 89, at 6) (citations omitted). This ignores the December 2015 amendments to the Rules, specifically the deletion of the following language from Rule 26(b)(1): "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." According to the 2015 Committee Notes, this deletion was designed to curtail reliance on the "reasonably

---

[4]   In the interim, as noted in the joint status reports on May 18, 2020 and July 17, 2020 (Docs. 73, 77), the parties continued to confer about disputes, and Defendant produced more documents; however, both sides sought extensions due to delays stemming from the Governor's Stay at Home Order and the COVID-19 Emergency Response which led to the Department being "inundated with urgent COVID-19 matters." (Doc. 73, at 1-2).

calculated" phrase to expand discovery beyond the permitted scope.[5] Relying on cases interpreting that now-deleted language, Plaintiffs argue that "[u]nder this standard, the Rules envision and require open, far-reaching discovery." (*Id.*).

As Plaintiffs later acknowledge, however, amended Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case"* considering a number of factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(1) (emphasis added). This is the standard that will be applied here.

### B. Interrogatories

**Interrogatories 4, 5, and 7** seek "the identification of each person responsible for determining" certain information in relation to "the proposed Sections 153.100, 153.125, and 153.126 of Title 89 of the Illinois Administrative Code and all proposed amendments to those sections[,]" namely:

- the date and content of each SPA, and submission of the SPA to CMS for approval (Interrogatory 4);
- the date and content of the public notice, and method of publication (Interrogatory 5); and
- the coding and web publication of the public notice (Interrogatory 7).

(Doc. 89-1, at 3, 4, 6).

---

[5] The Committee Notes state:

> The former provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence" is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the "reasonably calculated" phrase to define the scope of discovery "might swallow any other limitation on the scope of discovery." The 2000 amendments sought to prevent such misuse by adding the word "Relevant" at the beginning of the sentence, making clear that "'relevant' means within the scope of discovery as defined in this subdivision . . . ." The "reasonably calculated" phrase has continued to create problems, however, and is removed by these amendments. It is replaced by the direct statement that "Information within this scope of discovery need not be admissible in evidence to be discoverable." Discovery of nonprivileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery.

Defendant provided lengthy, specific, and in this Court's view, well founded objections. For example, Defendant's response to Interrogatory 4 states:

> Defendant objects to this interrogatory as confusing and misleading to the extent that it conflates the State Plan Amendment process under the Medicaid Act and related regulations with the separate and distinct rulemaking process for Illinois Administrative Code provisions.
>
> The Centers for Medicaid and Medicare Services (CMS), which is part of the federal Department of Health and Human Services, reviews and approves State Plan Amendments, not provisions of the Illinois Administrative Code.
>
> To the extent that this interrogatory seeks information regarding the state Plan Amendments corresponding to sections 153.100, 153.125, and 153.126 of Title 89 of the Illinois Administrative Code, defendant further objects that this request is not relevant to Plaintiffs' claims, overly broad, unduly burdensome, and not proportional to the needs of this case.
>
> First, the names of the specific individuals who determined the "date, content of each State Plan Amendment, and submission of the State Plan Amendment to CMS for approval" are neither necessary nor relevant to determining whether CMS approved a particular State Plan Amendment. When CMS approves a particular State Plan Amendment, it provides an approval letter to the Department, and Defendant has produced these letters as part of this litigation.
>
> Second, the request is overly broad, unduly burdensome, and not proportional to the needs of this case because Plaintiffs' claims appear to relate to dozens of State Plan Amendments, corresponding to at least 56 subparts of the Illinois Administrative Code, enacted at various times from 1994 to the present, a period of more than 25 years, making it essentially impossible to determine the names sought.
>
> Subject to and without waving these objections, see Defendant's document productions (Bates D00001-233), which include the CMS approval packages for the State Plan Amendments at issue, including correspondence with the Department that indicates the names of Department staff handling the submission to CMS.

> For example, the documents produced by Defendant as D00001-00006 include a letter from the Department to CMS enclosing a proposed State Plan Amendment and identifying by name the person at the Department to be contacted for any questions (in this instance, "Sharon Woods"), as well as the response transmittal from CMS approving the State Plan Amendment.

(*Id.* at 3-4).

Defendant made similar (but not identical) objections to Interrogatories 5 and 7. Defendant objected to Interrogatories 5 and 7 on the additional ground of lack of relevancy, noting that the public notice requirements for provisions of the Code, including Sections 153.100, 153.125, and 153.126, are a matter of state law under the Illinois Administrative Procedure Act. Subject to and without waiving her objections, Defendant responded to Interrogatory 5 as follows:

> . . . Defendant responds that state rulemakings are published in the Illinois Register, which is available at https://www.cyberdriveillinois.com/departments/index/register/home.html. In particular, the notices for Sections 153.100, 153.125, and 153.126 of Title 89 of the Illinois Administrative Code were published in the Illinois Register and are publicly available at this webpage. By way of example, the notice for a 2012 amendment to Section 153.100 of Title 89 of the Illinois Administrative Code appears in the June 12, 2012 Illinois Register, 36 Ill. Reg. 8128, and includes among other things the name of the Department's General Counsel at the time as the person to whom comments, data, views, or arguments concerning the rulemaking could be submitted.

(*Id.* at 6).

As for Interrogatory 7, Defendant declined to answer. After objecting on overbreadth grounds to providing the names of persons responsible for the "coding and web publication" of notice for any SPAs corresponding to Sections 153.100, 153.125, and 153.126 of the Code over a 25 year period, Defendant observed: " . . . in many instances notice was provided in newspapers rather than (or in addition to) via the Department's webpage. Additionally, to the extent that Defendant has produced a newspaper notice of a State Plan Amendment, this request relating to web notice is not relevant to plaintiffs' claims." (*Id.* at 7).

In their motion to compel, Plaintiffs say they seek the information requested in Interrogatories 4, 5, and 7 (as well as that sought in Interrogatory 9, as discussed below) "to further clarify and focus [their] claims more precisely, [and] it is highly relevant that Defendant's staff responsible for the above activities be identified for potential deposition."

(Doc. 89, at 7). Plaintiffs also question how it could be burdensome to provide this information since doing so merely requires "counsel to go to the human resources/personnel department, ask for job descriptions with the above-listed responsibilities, and match those responsibilities with a list of current and former employees who have/had experience and knowledge of the state's activities at the relevant times." (*Id.* at 3).

In response, Defendant stands by her objections but also observes that Plaintiffs' description of how defense counsel should gather the information "suggests a potential compromise." (Doc. 91, at 10). Defendant states that if Plaintiffs ask only that Defendant obtain job descriptions and match the responsibilities to current and former employees (as opposed to each of the 56 subparts of the Code provisions at issue), Defendant will agree to make reasonable efforts to determine the names of persons whose job responsibilities over the past approximately ten years (from 2010 to present) involved (a) providing public notice and (b) obtaining CMS approval for the SPAs corresponding to Sections 153.100, 153.125, and 153.126 of the Code. (*Id.*). Defendant said she could not guarantee that the information would be located but was willing to make reasonable efforts to find such names. (*Id.*).

Defendant's proposed compromise is reasonable under the circumstances here, so the Court adopts it and grants the motion to compel as to this additional information. The motion is otherwise denied as to Interrogatories 4, 5, and 7.

**Interrogatory 9** asks Defendant to: describe the Department's public notice process for promulgating amendments to the Code, including but not limited to SPAs; identify each Department employee or representative responsible for each part of the process; and if the plan has changed since implementation of Section 153.100, describe each public notice process for promulgating amendments to the Code. (Doc. 89-1, at 7).

The Court agrees with Defendant that the response to this interrogatory is sufficient. It describes the public notice process, and identifies Mary Doran, the Chief of the Department's Bureau of Program and Policy Coordination, as the employee with knowledge of the process. (*Id.* at 8-9).[6] According to Defendant's disclosures, Ms. Doran

---

6 After asserting objections similar to those for Interrogatories 4, 5, and 7, Defendant responded:

> . . . To the extent that the interrogatory seeks information regarding the Department's process for submitting proposed State Plan Amendments to CMS, Defendant responds as follows: Updates to the Department's state plan are made via a State Plan Amendment (SPA). A SPA must be submitted to federal CMS for their approval. The submission of a SPA normally includes revised pages, a transmittal form, standard funding questions, proof of public notice required under 42 CFR 447.205, and proof of tribal notification. CMS will not approve a SPA if there is no proof of public notice or tribal notification. Once CMS receives the submittal, they have 90 days to approve, deny or request additional information (RAI). If a

has knowledge regarding the public notice requirements for SPAs and the Department's past and present compliance with those requirements, including the Department's past and present policies, practices, and procedures relating to public notice for SPAs, and CMS approval of the amendments. (*Id.*). To the extent Plaintiffs later depose Ms. Doran and she is unable to provide necessary information, Plaintiffs may ask the Court to order additional discovery. If they do so, Plaintiffs must identify the specific information that is sought from Ms. Doran (or others) and explain why that information is relevant and proportional here. The motion to compel is denied as to Interrogatory 9.

**Interrogatory 10** asks, for each person who Defendant believes has knowledge of any of the facts underlying Plaintiffs' claims, to provide: (a) full name, last known home and business address and telephone number, and relationship to Plaintiffs; (b) current employer and position; (c) the facts and information which Defendant believes to be the substance of his or her knowledge and the source of such knowledge; and (d) the identity of any documents which relate to the person's information or knowledge, including any written statements. (*Id.* at 9).

Defendant did not object to this interrogatory but instead referred Plaintiffs to the Rule 26(a)(1) disclosures and any supplements, and said "Investigation continues." (*Id.*). In the motion to compel, Plaintiffs say "it is unknown whether any more state representatives will be identified." (Doc. 89, at 4). In response, Defendant states she will comply with the duty to seasonably update Rule 26(a)(1) disclosures, has identified several additional persons with knowledge, and will supplement within fourteen days. (Doc. 91, at 11).

The motion to compel is denied as moot. The Court assumes Defendant has supplemented by now, and at the next status hearing, the Court will ask the parties to propose a future date by which the parties' disclosures will again be supplemented.

---

Request for Additional Information (RAI) is requested, the state has 90 days to respond. Once the response to the RAI is submitted to CMS, they, again, have 90 days to approve or deny.

The Department's position responsible for submitting State Plan Amendments to CMS is presently vacant; thus no name can be provided at this time. However, Mary Doran, the Department's Bureau Chief, Bureau of Program and Policy Coordination, has knowledge regarding the public notice requirements for State Plan Amendments and the Department's past and present compliance with those requirements, including the Department's past and present policies, practices, and procedures relating to public notice for State Plan Amendments. Ms. Doran also has knowledge regarding CMS approval of State Plan Amendments.

(Doc. 89-1, at 8-9).

### C. Requests for Production

**Request 2** asks for a copy of each document retention policy in effect for the Department or the State of Illinois at any time between 2005 and the present. While Defendant objected to this request as overbroad since it asks for production of all document retention policies for the "State of Illinois" rather than simply the Department, Defendant agreed to search for and produce Department policies in effect since 2005 that can be located after a reasonable search. Plaintiffs are satisfied with this response but ask that the Court set a specific deadline by which Defendant must complete a reasonable search and produce responsive documents. The Court grants this request. To the extent Defendant has not yet completed the search and produced responsive documents, she shall do so by October 26, 2021.[7]

**Requests 3 and 4** ask for all memoranda, policies, and communications (a) regarding publishing of public notice or notice and comment periods for Long Term Care or Nursing Home per diem reimbursement rate changes and (b) discussing whether a Long Term Care or Nursing Home per diem reimbursement rate change requires prior notice or a notice and comment period, respectively.

These requests are best considered together since the parties do so in their briefing. In the motion to compel, Plaintiffs observe that Requests 3 and 4 are "simple and highly relevant, and seek any and all memorandae, directives, policies and communications that touch on the Federal requirements, 42 U.S.C. §§ 1396a(a)(13)(A);1396a(a)(30)A, and associated federal regulations, and as required by 5 ILCS 160 et seq., preserving state records." (Doc. 89, at 9). They say "[t]he intent of these Requests is to produce any and all documents that reflect Defendant's awareness of and compliance or non-compliance with the notice and comment requirements of the Federal Medicaid statute and regulations" and such documents are "highly relevant" since they "will demonstrate if Defendant is even aware of the above federal statutory and regulatory requirements, and the intent to comply or not to comply with these requirements." (*Id.* at 9-10).

Defendant disagrees, describing the requests as "overly broad, unduly burdensome, and irrelevant or not proportional to the needs of this case." (Doc. 91, at 4). More specifically, Defendant complains that the requests do not specify any time frame, or identify any specific "per diem reimbursement rate changes" for which they are seeking documents. (*Id.*). Therefore, "[a]s drafted, Plaintiffs' request could require Defendant to search for documents relating to unspecified Long Term Care or Nursing Home per diem reimbursement rate changes going back decades, while Plaintiffs' claim is limited to alleged ongoing violations of federal law and to certain subparts of the Illinois Administrative Code." (*Id.*). Defendant further notes that, "to the extent there is factual dispute between the parties, it is about *when* and *whether* the Department published certain notices (Dkt. No. 48), yet their request goes well beyond this." (*Id.*) (emphasis in

---

[7] As Plaintiffs note, Defendant's response to the motion mistakenly identifies Request 2 as being numbered Request 1.

original). And since the district judge [Judge Gottschall] has already dismissed the claim relating to quarterly rate changes for nursing facilities, any documents on that topic are "out of bounds[.]" (*Id.*). Finally, Defendant describes as "bizarre" the argument that these records are necessary to show whether Defendant is aware of, and intended to comply with, federal notice requirements:

> *Of course* the Illinois Department of Healthcare and Family Services, the state agency responsible for providing healthcare coverage for adults and children who qualify for Medicaid, is well-aware of the federal Medicaid notice requirements. Defendant's answer to Plaintiffs' complaint, Dkt. No. 59, confirms as much. In any event, Defendant's "state of mind" has no bearing on the claims in this case, where the issue is whether Defendant is complying with the federal Medicaid Act, not whether she intends to comply. Finally, even if Defendant's intent were relevant (it is not), Plaintiffs' broad request for all memoranda, policies, and even "communications" relating to Long Term Care or Nursing Home per diem reimbursement rate changes, without any time period limitation, and without any specificity as to which rate changes are at issue, is overbroad and not proportional to the needs of this case.

(*Id.* at 5). More importantly for purposes of the pending motion, Defendant argues that the Court should deny it as to Request 3 because she agreed to produce a subset of the documents sought, namely: " . . . documents reflecting Department policies or procedures that are currently in effect and that relate to the Department's submission of proposed State Plan Amendments to CMS or its publication of notice for State Plan Amendments." (Doc. 89-1, at 13-14).

Plaintiffs' motion and reply brief do not address Defendant's objections or argue that a broader response is appropriate here. Instead, Plaintiffs ask only that the Court set a deadline for Defendant to complete the search and produce the documents that it has agreed to produce. The Court grants that request. As with Request 2, Defendant's deadline is October 26, 2021. Otherwise, the motion to compel is denied as to Request 3.

As for Request 4, Defendant argues the request "is irrelevant and unduly burdensome for the same reasons" as Request 3, but also says the motion should be denied as moot since "Defendant indicated in her responses that she searched for and did not locate any responsive documents." (Doc. 91, at 6). Plaintiffs acknowledge this but complain that "[i]t is unknown to what extent such efforts or reasonable inquiry were made to identify and produce such documents." (Doc. 89, at 10). In their view, "[i]t is almost impossible to imagine that SPAs that were prepared, submitted to CMS, modified or approved by CMS, and then promulgated as state regulations involved no committee meetings or other staff meetings, policies, directives, memorandae, e-mail exchanges, or

13

other discussions among staff or employees responsible for publishing such notices . . . ." (Doc. 93, at 5-6). And assuming such documents do not exist, Plaintiffs argue Defendant must not have complied with "the State Records Act." (*Id.* at 6). So they ask that Defendant be ordered to produce a "log" in relation to this request. (Doc. 89, at 10). Plaintiffs do not describe the specific information to be included in the log—only that the log is for "justifications of documents that may have existed at the relevant times, but now do not exist pursuant to the State Records Act, the above requested document retention policies, or other legal authority controlling the discard or destruction of such documents." (*Id.*).

Defendant objects to this request for a log, noting that Plaintiffs never asked for a log prior to filing the motion. (Doc. 91, at 6). In addition, Defendant argues that Plaintiffs "have not set forth *any* basis for concluding that documents responsive to [Request 4] *ever* existed, much less that such documents existed were [sic] improperly destroyed." (Doc. 91, at 6) (emphasis in original).

This Court denies Plaintiffs' motion to compel as to Request 4, and declines to require Defendant to provide a log of justifications. Given the wording of Request 4 and the lack of any time limitation on it, the request is certainly overbroad. It also is not proportional to the needs of the case since the key issue, as Defendant has argued, is whether Defendant is complying with the federal Medicaid Act. Plaintiffs have not provided any caselaw on point, or persuasive argument, demonstrating the need for discovery to establish whether Defendant was "aware" of the federal law and had the intent to comply or not.

**Request 30** asks for all documents which Defendant intends to use as an exhibit, including demonstrative exhibits, at trial or in any dispositive motions.

In response to this request, Defendant objected that it was premature and said she would produce any responsive documents at the appropriate time. In their motion to compel, Plaintiffs acknowledge that Request 30 is premature in seeking production at this time of all documents that Defendant intends to use as an exhibit at trial; however, they argue Defendant should be required to identify specific exhibits that will be used for dispositive motions at this time since they expect the Court to set a schedule for those motions after ruling on this discovery motion. (Doc. 89, at 10-11). Defendant opposes the motion since discovery is ongoing, no depositions have been taken, and no schedule has been set for dispositive motions. (Doc. 91, at 7). In addition, Defendant says she is unable to identify with specificity what exhibits will be used but Plaintiffs should assume that all documents produced to date (labeled D1-233) may be used. (*Id.*). The motion to compel as to Request 30 is denied as premature.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to compel full and complete responses to Interrogatories 4, 5, 7, 9, and 10, and Requests for Production 2, 3, 4, and 30 (Doc. 88) is granted in part and denied in part as follows. As to the Interrogatories,

the motion is: granted in part as to Interrogatories 4, 5, and 7; and denied as to Interrogatories 9 and 10. As for the Requests for Production, the motion is: granted in part as to Requests 2 and 3; and denied as to Requests 4 and 30. Defendant is to produce any documents responsive to Requests 2 and 3 by October 26, 2021. A telephone status hearing is set on November 2, 2021 at 11:00 a.m.

ENTER:

Dated: October 12, 2021

Sheila Finnegan
United States Magistrate Judge